# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTIAN AVITIA,<br>Plaintiff<br><br>v.<br><br>CITY OF CHICAGO, *et al.*,<br>Defendants | No. 23 CV 15957<br><br>Judge Jeremy C. Daniel |

## MEMORANDUM OPINION AND ORDER

Following his arrest in June 2022, Plaintiff Christian Avitia's Firearm Owner's Identification ("FOID") and Concealed Carry License ("CCL") were revoked. Avitia filed suit against the City of Chicago (the "City"), six of its police officers,[1] the Director of the Illinois State Police ("ISP"), and the State of Illinois (together with the ISP Director, the "State") alleging that the arrest and the subsequent revocation of his firearm credentials violated his federal civil rights under 42 U.S.C. § 1983 and state law. (R. 1.) The City, the officers, and the State each filed a motion to dismiss the complaint. (R. 28; R. 29; R. 38.)[2] For the reasons below, the City and the officers' motions are granted in part and denied in part. The State's motion is granted.

---

[1] Avitia names Officers Bernard Lee, Tim Tully, T.M. Bickham, Kevin Sweeney, and Erin Murphy as defendants. (R. 1 ¶¶ 6–10.)

[2] For CM/ECF filings, the Court cites to the page number(s) set forth in the document's CM/ECF header unless citing to a particular paragraph or other page designation is more appropriate.

## BACKGROUND[3]

On June 29, 2022, Chicago Police Department ("CPD") Officers Bernard Lee and Tim Tully stopped Avitia for driving a car with a tinted registration plate cover. (R. 1 ¶ 19.) During the stop, the officers asked Avitia if he had any weapons in the car.[4] (*Id.* ¶ 20.) Avitia told the officers that he had a Beretta 9mm on the front passenger seat. (*Id.* ¶ 21.) He provided the officers a physical copy of his FOID and told the officers he could provide an electronic version of his CCL, *i.e.* an "eCARD," as he was waiting for his physical copy to arrive in the mail. (*Id.* ¶¶ 15, 24, 27.) Illinois law permits the display of eCard versions of FOID and CCL during a traffic stop. *See* 430 ILCS 65/6.2.

The officers were not familiar with the eCard and did not allow Avitia to access it on his phone to demonstrate that he was properly licensed. (*Id.* ¶¶ 28–33.) They could not find Avitia's CCL in the Law Enforcement Agencies Data System ("LEADS"). (*Id.* ¶ 34.) Avitia was arrested and charged with aggravated unlawful use of a weapon. (*Id.* ¶¶ 35, 37.) Officer T.M. Bickham approved probable cause for the arrest. (*Id.* ¶ 36.) Upon his arrest, the State revoked Avitia's FOID and CCL. (*Id.* ¶ 39.) The charges against Avitia were later dismissed. (*Id.* ¶ 40.) Avitia reapplied for his FOID and CCL following the dismissal of his case. (*Id.* ¶ 41.) Although his firearm

---

[3] The background information is taken from the well-pleaded allegations in the complaint and is accepted as true for purposes of the motions to dismiss. *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 973 n.2 (7th Cir. 2021).

[4] At some point during the stop, Officers Lee and Tully were joined by Officers Kevin Sweeny and Erin Murphy arrived on scene. (*Id.* ¶ 25.)

2

credentials had not been reissued at the time he filed suit, (*id.*), they have since been restored. (R. 12.)

Avitia's complaint alleges violations of the Second, Fourth, and Fourteenth Amendments under § 1983, supervisor and municipal liability under § 1983, and state law claims for negligence, willful and wanton conduct, and indemnification. The State moves for partial dismissal of Avitia's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (R. 38.) The City and the officers each move for partial dismissal of the complaint under Rule 12(b)(6). (R. 28; R. 29.)

## LEGAL STANDARD

Rule 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Both mootness and sovereign immunity implicate the Court's subject matter jurisdiction and, thus, are evaluated under Rule 12(b)(1). *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (explaining mootness relates to Article III's case-or-controversy requirement that parties must have a "personal stake in the outcome of the lawsuit" through all stages of proceedings); *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 520 (7th Cir. 2021) (explaining sovereign immunity is a jurisdictional defense that "bars actions in federal courts against a state, state agencies, or state officials acting in their official capacities.").

A motion to dismiss under Rule 12(b)(6) tests whether the plaintiff has provided "enough factual information to state a claim to relief that is plausible on its face" and has "raise[d] a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citing *Camasta*

3

*v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Dismissal is proper where "the allegations . . . , however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

## ANALYSIS

### I. THE STATE'S MOTION TO DISMISS UNDER RULE 12(B)(1) AND 12(B)(6)

Avitia's complaint asserts a Second Amendment claim (Count I) and a Fourteenth Amendment claim (Count IV) against the State stemming from the revocation and delayed restoration of his FOID and CCL. For both claims, Avitia seeks damages from ISP Director Brendan F. Kelly, and an injunction against the State of Illinois to restore his FOID and CCL. (R. 1 at 8, 12.) The State argues that these claims should be dismissed because (1) any claims against the State of Illinois are barred by the Eleventh Amendment, (2) any claims for injunctive relief are moot, and (3) the allegations are insufficient to state a claim against Director Kelly in his individual capacity. (R. 38 at 2.)

#### A. Sovereign Immunity and Mootness

"'Sovereign immunity is the privilege of the sovereign not to be sued without its consent' and is secured to the states by the Eleventh Amendment." *Valcq*, 16 F.4th at 520 (quoting *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011)). Under the doctrine, states are immune from suit in federal court by private litigants unless (1) the state unequivocally waives sovereign immunity, (2) Congress unequivocally

abrogates the state's immunity through its enforcement powers under the Fourteenth Amendment, or (3) the suit seeks prospective relief against a state official for an ongoing violation of federal law (also known as the *Ex Parte Young* exception). *Kroll v. Bd. of Trustees of Univ. of Ill.*, 934 F.2d 904, 907–08 (7th Cir. 1991) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Injunctive relief is prospective relief; monetary damages are not. *Valcq*, 16 F.4th at 521.

Avitia brings federal constitutional claims against the State of Illinois under § 1983. Section 1983 does not authorize suits against states, *see Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000); nor do any one of the sovereign immunity exceptions apply. Avitia's claims against the State of Illinois are, thus, barred under the doctrine of sovereign immunity. The same is true for any claims asserted against ISP. *See Kroll*, 934 F.2d at 907 ("[A] state agency *is* the state for purposes of the [E]leventh [A]mendment.") (emphasis in original); *Gossmeyer v. McDonald*, 128 F.3d 481, 494–95 (7th Cir. 1997) ("The Illinois State Police is a state agency . . .").

With respect to the official capacity claims against ISP Director Kelly, Avitia seeks monetary damages, not prospective injunctive relief. Accordingly, the *Ex Parte Young* doctrine does not apply. *See Valcq*, 16 F.4th at 521 (citing *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 291 (7th Cir. 1993) ("The [E]leventh [A]mendment bar extends to suits for money damages against state officials sued in their official capacities . . .")). In any event, as Avitia conceded in his motion to withdraw his motion for a preliminary injunction, "the issue of restoration is now moot because the State of Illinois and Brendan F. Kelly have issued and/or restored Plaintiff's FOID and

5

CCL." (R. 12.); *see Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 240–41 (2024) (When "a complaining party manages to secure outside of litigation all the relief he might have won in it . . ., a federal court must dismiss the case as moot.").

Nonetheless, Avitia argues that a live case or controversy remains because he is entitled to seek reasonable attorney fees as a "prevailing party" under § 1983. (R. 40 at 3.) This proposition, however, relies on the repudiated "catalyst theory." *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001) (rejecting the "catalyst theory" as a permissible basis for the award of attorney's fees). As the Supreme Court explained in *Buckhannon*, a party does not prevail for purposes of attorney's fees simply because a lawsuit prompts a voluntary change in the defendant's conduct; rather, a prevailing party is "one who has been awarded some relief by a court." *Id.* at 603, 605.

"[T]o be a 'prevailing party' a litigant must have obtained a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief." *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 479 (7th Cir. 2003) (citing *Buckhannon*, 532 U.S. at 603–04.) Avitia did not. Rather, the State voluntarily restored his FOID and CCL prior to the entry of anything resembling a judgment. And despite Avitia's arguments to the contrary, the Court's order granting his motion to withdraw his motion for a preliminary injunction is not the type of judicially sanctioned relief that constitutes a "'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Buckhannon*, 532 U.S. at 604 (quoted case omitted). Avitia is not a prevailing party in this regard and is not entitled to

6

attorney's fees. *See Richardson v. City of Chi., Ill.*, 740 F.3d 1099, 1102 (7th Cir. 2014) ("Costs (and fees) do not follow moral victories . . .; they depend on concrete judgments that alter legal relations.").

Avitia's claims for monetary damages are barred under the doctrine of sovereign immunity, and his claim for prospective injunctive relief is moot. Accordingly, the State's motion to dismiss Counts I and IV against the State of Illinois and the ISP Director in his official capacity is granted. The State of Illinois is dismissed as a defendant to this action, as is ISP Director Kelly in his official capacity.

### B.  Individual Liability Under § 1983

In addition to his official capacity claims, Avitia names ISP Director Kelly in his personal capacity. (R. 1 ¶ 11.) Individual liability under § 1983 "requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017). To state a claim against an official in a supervisory role, "a § 1983 plaintiff may not rely on a theory of respondeat superior and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). To that end, the plaintiff must allege "a causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert*, 851 F.3d at 657.

Avitia's complaint contains no allegations that indicate Kelly's individual conduct caused the alleged constitutional deprivations. Rather, his allegations make only general reference to the "State of Illinois" and the "State Police" with respect to the revocation and delayed restoration of his CCL and FOID. (*See* R. 1 ¶¶ 39, 41–42, 90.) Such allegations fall short of stating a plausible theory of individual liability

7

against Kelly. *See, e.g., Marszalek v. Kelly*, No. 20 C 4270, 2022 WL 225882, at *8 (N.D. Ill. Jan. 26, 2022) ("For supervisors like Kelly and Trame to be found liable in their individual capacity under § 1983, they must know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.") (internal quotation marks and citations omitted). In the absence of allegations from which this Court can reasonably infer that Kelly knew about or was personally involved in the handling of Avitia's FOID and CCL, an individual capacity claim against Kelly cannot stand under § 1983. *See Taylor v. Ways*, 999 F.3d 478, 494 n.7 (7th Cir. 2021) ("[A] plaintiff must allege *direct* liability to maintain an individual claim under § 1983.") (emphasis in original). Accordingly, the Court grants the State's motion to dismiss Counts I and IV against ISP Director Kelly in his personal capacity. ISP Director Kelly is dismissed as a defendant to this action in his personal capacity.

## II. THE CITY AND THE OFFICERS' MOTIONS TO DISMISS UNDER RULE 12(B)(6)

Avitia asserts that the City and its officers violated his federal constitutional rights under § 1983 (Counts I–V) and state law (Counts VI–IX) by unlawfully arresting him for unlawful use of a weapon despite having an eCard. The officers and the City each move to dismiss Avitia's claims, arguing: (1) there existed probable cause for his arrest; (2) his allegations are insufficient to state a supervisory or municipal liability claim under § 1983; and (3) his state law claims are barred under the Illinois Tort Immunity Act, 754 ILCS 10/1-101 *et seq.* (*See* R. 28; R. 29.)

8

A.     Matters Outside the Complaint

As an initial matter, the City and the officers argue that the Court should consider the officers' body-worn camera ("BWC") footage and the LEADS Daily Bulletin from June 24, 2022, when ruling on their motions to dismiss. (R. 28 at 3–5; R. 29 at 4–6.) They rely on the incorporation-by-reference doctrine, which permits the Court to consider materials outside the pleadings in ruling on a 12(b)(6) motion when the materials are referenced in the plaintiff's complaint and central to his claim without converting the motion to one for summary judgment. *Fin. Fiduciaries, LLC v. Gannett Co., Inc.*, 46 F.4th 654, 663 (7th Cir. 2022); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

The June 24th LEADS Bulletin notified Illinois law enforcement agencies that firearm owners could use an eCard in lieu of a physical license. (R. 29-1.) It states that "[s]imilar to the display of a digital insurance card, the eCard for FOID/CCL will allow card holders to show their most recent information during a traffic stop." (*Id.*) The LEADS Bulletin is both quoted in Avitia's complaint and is central to his claims. (R. 1 ¶¶ 14, 16.) The Court may therefore consider it in ruling on the defendants' motions to dismiss.

The BWC footage presents a closer issue. Avitia does not directly mention the footage itself, but his complaint references conversations that the officers had outside of his presence that were captured by the footage. (*Id.* ¶ 32.) Further, the BWC footage captures the entirety of the traffic stop, which provides the basis for Avitia's claims. *Cf. Hyung Seok Koh v. Graf,* No. 11 C 2605, 2013 WL 5348326, at *10 (N.D. Ill. Sept.

9

24, 2013) (considering BWC footage on a motion to dismiss because it provided a complete picture of the interrogation). Importantly, Avitia does not object to the authenticity of the BWC footage, nor does he object to the Court considering it. (R. 41 at 1; R. 42 at 1); *cf. Tate v. City of Chi.*, No. 19 C 7506, 2020 WL 6715660, at *1 (N.D. Ill. Nov. 16, 2020) (considering BWC footage where plaintiff did not object to its consideration). For these reasons, the Court will consider the BWC footage. In doing so, the Court views the footage in the light most favorable to Avitia. *See Graf*, 2013 WL 5348326, at *10 (citing *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013)) ("When an exhibit contradicts the allegations in the complaint, ruling against the non-moving party on a motion to dismiss is consistent with our obligation to review all facts in the light most favorable to the non-moving party.").

      **B.**    **Federal Claims**

          **1.**    **Second Amendment Claim**

In Count I, Avitia alleges that his Second Amendment rights were violated when the officers did not allow him to present an eCard as proof of his CCL and then arrested and charged him with unlawful use of a weapon, resulting in the revocation of his firearm credentials. (R. 1 ¶¶ 27, 31, 33, 35, 37, 39.) The Second Amendment protects the individual right to keep and bear arms, including the right to bear arms in public. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022). In Illinois, properly licensed individuals are permitted to carry concealed firearms. *See* 430 ILCS 66/1, *et seq*.

The Seventh Circuit has not yet addressed the effect of a state's concealed carry law on the reasonableness of an officer's suspicion that possession of a firearm is evidence of a crime. *See, e.g., United States v. Jones*, __ F. Supp. 3d __, 22 CR 592, 2023 WL 8879171, *5 (N.D. Ill. Dec. 22, 2023). Nevertheless, Avitia does not allege that he was stopped for possession of a firearm. (*See* R. 1 ¶ 19.) The complaint thus does not implicate the Second Amendment with respect to the initial stop.

To the extent Avitia premises his Second Amendment claim on the officers' seizure of his firearm, this, too, has not been specifically addressed by the Seventh Circuit. *See Sutterfield v. City of Milwaukee*, 751 F.3d 542, 571–72 (7th Cir. 2014) (declining to address the issue, explaining it is a sensitive one that "implicates not only the individual's right to possess a firearm, but the ability of the police to take appropriate action when they are confronted with a firearm that may or may not be lawfully possessed. . ."); *see also Rightsell v. Ind. State Police*, No. 19 C 4927, 2021 WL 2686152, at *5 (S.D. Ind. June 30, 2021) (explaining *Sutterfield* is "the Seventh Circuit's latest word on the matter"). Avitia does not cite any authority to support a claim that law enforcement's seizure of a firearm, without more, constitutes a violation of his right to bear arms. Rather, he challenges the lawfulness of the arresting officers' seizure only on grounds that they lacked probable cause. (*See* R. 41 at 3–8.) Such a claim implicates the Fourth Amendment, which protects against unreasonable seizures, not the Second, which protects the right to keep and bear arms. Here, the gist of the complaint is that Avitia lawfully possessed a firearm, which the officers unlawfully seized. The Court will therefore consider Avitia's

11

allegations under the more applicable constitutional provision, which is the Fourth Amendment. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)) ("Constitutional claims must be addressed under the most applicable provision."). Count I is therefore dismissed.

### 2. Fourth Amendment Claim

In Count II, Avitia alleges a Fourth Amendment claim which, like Count I, is largely predicated on the officers' refusal to accept an eCard as proof of his CCL. Avitia claims that the officers "intentionally disregarded evidence showing his innocence," and that they had no legal basis to stop his vehicle and arrest him. (R. 1 ¶¶ 74–75.) The officers argue that these claims must be dismissed because, contrary to Avitia's allegations, probable cause supported his arrest. (R. 28 at 5–6.)

The Fourth Amendment protects individuals from unreasonable searches and seizures. *Patrick v. City of Chi.*, 81 F.4th 730, 736 (7th Cir. 2023). "Ordinarily seizures are 'reasonable' only when supported by probable cause to believe an individual has committed a crime." *Matz v. Klotka*, 769 F.3d 517, 522 (7th Cir. 2014). Probable cause exists "when the facts and circumstances that are known to [the officer] reasonably support a belief that the individual has committed, is committing, or is about to commit a crime." *Doe v. Gray*, 75 F.4th 710, 718 (7th Cir. 2023). "Though a police officer need not engage in further investigation once he has established probable cause, he 'cannot consciously disregard information that would bring clarity to a confusing situation.'" *Jordan v. Bonano*, 636 F. Supp. 3d 924, 930 (N.D. Ill. 2022) (quoted case omitted). The existence of probable cause is an absolute defense to any

12

§ 1983 claim against a police officer for unlawful arrest. *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 713–14 (7th Cir. 2013).

As mentioned above, Avitia alleges that he was stopped for having a tinted license plate cover. (R. 1 ¶ 19.) Illinois law prohibits "tinted plastic or tinted glass registration plate . . . or any covers . . . that obstruct the visibility or electronic image recording of the plate . . ." 605 ILCS 10/27.2(a). Avitia concedes in his response brief that his license plate cover was tinted, and the BWC footage shows the same. (R. 31 ("Tully BWC Footage") at 12:53:52.) There is thus no basis for this Court to reasonably infer that the officers lacked probable cause for the initial traffic stop. *See United States v. Hernandez-Rivas*, 513 F.3d 753, 758–59 (7th Cir. 2008) ("An officer has probable cause for a traffic stop when he has an objectively reasonable basis to believe a traffic law has been violated.").

Next, Avitia alleges that the officers conducted a field interview at which time Avitia advised that he had a Beretta "inserted in a black holster with a fully seated magazine containing ammunition located on the front passenger seat." (R. 1 ¶ 22.) Illinois law prohibits individuals from carrying or possessing a firearm in a vehicle. 720 ILCS 5/24-1(a)(4). An exception to this statute exists for individuals who have a CCL. *See* 720 ILCS 5/24-1(a)(4)(iv). Having a FOID is another exception, but the firearm must be "unloaded and enclosed in a case, firearm carrying box, shipping box, or other container." 720 ILCS 5/24-1(a)(4)(iii).

Avitia alleges that he had the ability to demonstrate that he was properly licensed to carry his firearm via eCard. (R. 1 ¶ 17.) The BWC footage does not

13

contradict this allegation. Rather, it shows that Avitia informed the officers that he had a CCL eCard and began navigating his phone to pull it up. (R. 31 ("Lee BWC Footage") at 12:54:27–12:59:55.) Avitia further claims that the officers did not know about the eCard, were not aware that it could be presented in lieu of a physical card under Illinois law, and would not allow Avitia to show it as proof of his CCL. (R. 1 ¶¶ 27–31, 33.) The footage does not contradict these allegations either. The officers can be heard questioning the significance of an eCard, (Lee BWC Footage at 12:54:43, 12:58:25), and Avitia is handcuffed as he attempts to show the officers his phone. (*Id.* at 12:59:55.) The video therefore supports, rather than contradicts, the complaint's plausible allegations that the officers "disregarded information that would bring clarity to a confusing situation," *i.e.,* Avitia's possession of an eCard showing he was properly licensed to openly carry his firearm. *Jordan*, 636 F. Supp. 3d at 930. Avitia's Fourth Amendment claim thus survives the defendant officers' motion to dismiss.

The officers' qualified immunity argument does not compel a contrary conclusion. First and foremost, qualified immunity is disfavored as a reason for dismissal at the pleadings stage. *See Jacobs v. City of Chi.*, 215 F.3d 758, 765 (7th Cir. 2000). Nevertheless, the officers argue that, even if they had referred to the LEADS Bulletin regarding the eCard, the outcome of the traffic stop would have been the same based on the results of their LEADS inquiry. (R. 28 at 9.) Such an argument is not only speculative, but it also misstates the qualified immunity inquiry on a motion to dismiss. "Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply

14

on summary judgment." *Reed v. Palmer*, 906 F.3d 540, 549 (7th Cir. 2018) (internal quotation marks and citations omitted). "Under the former, 'it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Id.* (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)) (emphasis in original).

As alleged in the complaint, the officers arrested Avitia for not complying with Illinois' concealed carry laws even though he was properly licensed and could have demonstrated as much but for the officers' lack of knowledge regarding the eCard. This is enough to withstand the officers' qualified immunity argument at this stage. Accordingly, the defendant officers' motion to dismiss Count II is denied.

### 3. Fourteenth Amendment Claim

In Count IV, Avitia alleges a Fourteenth Amendment due process claim. This claim, however, is predicated on the same facts as those alleged in his Fourth Amendment unlawful arrest claim. (R. 1 ¶ 89.) As the officers point out in their motion to dismiss, "where a plaintiff premises a Fourth Amendment claim and a substantive due process claim on the exact same conduct, generally speaking the due-process claim cannot go forward." *A.G. v. City of Park Ridge*, 198 F. Supp. 3d 856, 864 (N.D. Ill. 2016). Avitia has waived any argument in response as he failed to address the issue in his brief. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (conclusory and underdeveloped arguments are waived); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Count IV is therefore dismissed.

#### 4. Supervisor Liability under § 1983

In Count III, Avitia alleges a "supervisory liability" claim against Officers Bickham and Murphy, claiming that they are liable for the unconstitutional conduct of their subordinates. (R. 1 ¶ 79.) The officers argue that this claim must be dismissed as to Officer Bickham because Avitia does not allege that he was personally involved in the traffic stop. (R. 28 at 11–13.)

As discussed, Avitia cannot rely on a theory of respondeat superior to impose liability against a supervisor under § 1983; rather, he must allege that Officer Bickham was personally involved in the alleged constitutional deprivation. *Colbert*, 851 F.3d at 657; *Perez*, 792 F.3d at 781. The complaint alleges only that officer Bickham, as supervisor, approved probable cause for Avitia's arrest. (R. 1 ¶ 36.) But this conclusory allegation does not permit a reasonable inference that Officer Bickham was somehow personally involved at the scene of the arrest.

In his response brief, Avitia relies on the collective knowledge doctrine, contending that the knowledge of the officers at the scene was imputed to Officer Bickham, thereby making him liable under § 1983. (R. 41 at 10.) The collective knowledge doctrine is triggered "when information from one jurisdiction is actually related to officers or agencies in another jurisdiction," or "when officers are in communication with each other while working together at a scene." *United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005). The former does not apply, and there are no allegations to support the latter. Accordingly, Count III is dismissed as to Officer Bickham. Officer Bickham is dismissed as a defendant to this action.

### 5. Municipal Liability under § 1983

In Count V, Avitia raises a claim under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), based on the City's alleged practices and policies (or lack thereof) regarding the handling and acceptance of eCards during traffic stops. (R. 1 ¶¶ 96, 98–99, 101.) To state a *Monell* claim against the City, Avitia must allege (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). Gaps in an express policy, or the absence of a policy, can give rise to a claim. *See Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). Avitia must also allege causation, meaning that the municipality's policy or custom was the "moving force" behind the federal-rights violation. *First Midwest Bank Guardian of Est. of LaPorta v. City of Chi.*, 988 F.3d 978, 987 (7th Cir. 2021).

First the City argues that the *Monell* claim fails for lack of an underlying constitutional violation. (R. 29 at 7.) The Court has determined that Avitia has sufficiently pleaded a Fourth Amendment claim against the officers, so this argument fails. But, as discussed below, that is as far as Avitia's *Monell* claim goes.

Avitia alleges both that the City had a widespread pattern or practice of not accepting eCards, as well as the absence of a policy regarding the handling of eCards. (R. 1 ¶¶ 55–56, 96–97.) "Both in the 'widespread practice' implicit policy cases and in

17

the cases attacking gaps in express policies, what is needed is evidence that there is a true municipal policy at issue, not a random event." *Petropoulos v. City of Chi.*, 448 F. Supp. 3d 835, 840 (N.D. Ill. 2020) (quoting *Calhoun*, 408 F.3d at 379). And though it is not impossible for a plaintiff to establish a widespread practice or custom based on his own experience, it is "necessarily more difficult" to do so. *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008).

Putting aside Avitia's boilerplate allegations that the City had a widespread policy regarding the handling of eCards, his complaint rests entirely on his own personal experience. He does not allege any additional examples of police misconduct regarding the handling or acceptance of eCards, let alone police misconduct generally. His allegations are, thus, insufficient to state a plausible *Monell* claim under a custom or practice theory. *See Carmona v. City of Chi.*, No. 15 C 462, 2018 WL 306664, at *2 (N.D. Ill. Jan. 5, 2018) ("Courts in this District regularly dismiss *Monell* claims where the plaintiff has failed to allege instances of misconduct other than that from which he suffered.").

Avitia's failure-to-train allegations are similarly insufficient. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). This limiting principle prevents plaintiffs from blaming "any slip-up by a municipal employee on a lack of a policy, or insufficient training or supervision." *Petropoulos*, 448 F. Supp. 3d at 841 (explaining that requiring a number of examples is a way of enforcing the bar against holding

18

municipalities vicariously liable for the actions of their employees). Here, Avitia alleges in conclusory fashion, without any supporting facts, that the City failed to properly train employees on handling or processing eCards. (R. 1 ¶¶ 54, 99, 101.) That is exactly the type of generic allegation that is insufficient to survive a motion to dismiss. *See, e.g., Petropoulos*, 448 F. Supp. 3d at 843 ("Generic allegations – based on a single experience – are not enough" to state a claim for failure to train).

Avitia also tries to state a *Monell* claim based on an official-policymaker theory, alleging that Officers Murphy and Bickham are "persons with final policymaking authority" who caused his constitutional injuries. (R. 1 ¶ 103.) Other than including their titles as sergeants, (*see id.*), the complaint does not contain any factual allegations about Officers Murphy and Bickham's authority. The Court cannot infer that these officers had final policymaking authority merely because they held the title of sergeant. *See Johnson v. Sandidge*, 87 F. Supp. 3d 832, 835 (N.D. Ill. 1999) (explaining that the assertion that sergeants are policymakers for purposes of *Monell* "flies squarely in the face of Seventh Circuit precedent holding that police sergeants are *not* policymakers") (citations omitted) (emphasis in original). Because Avitia's allegations are insufficient to support a theory of municipal liability under *Monell*, Count V is dismissed.

### C. State Law Claims

#### 1. Illinois Tort Immunity Act

The City and the officers contend that the plaintiff's state law claims of negligence (Count VI), gross negligence (Count VII), and willful and wanton conduct

(Count VIII) must be dismissed under the Illinois Tort Immunity Act, 745 ILCS 10/8-101(a), which provides a one-year limitations period for tort claims against employees of local entities. (R. 28 at 10–11; R. 29 at 10.) Avitia concedes that these claims must be dismissed as time barred. (R. 41 at 10; R. 42 at 11.) Counts VI, VII, and VIII are dismissed.

### 2. Indemnification

Finally, the City argues that Count IX, Avitia's state law claim for indemnification, must be dismissed if the claims against the officers are dismissed. (R. 29 at 15.) Because the Court denies the officers' motion to dismiss with respect to Count II, the Court denies the City's motion to dismiss Count IX.

### CONCLUSION

For the reasons discussed herein, the defendant officers' motion to dismiss [28] is granted in part and denied in part; the City's motion to dismiss [29] is granted in part and denied in part; and the State's motion to dismiss [38] is granted. Counts I, IV, V, VI, VII, VIII, and IX are dismissed in their entirety. Count III is dismissed as to Officer Bickham. The State of Illinois, ISP Director Brendan F. Kelly, and Officer T.M. Bickham are dismissed as defendants to this action. The remaining defendants shall answer the remaining claims, Counts II and IX, by June 10, 2024.

Date: May 20, 2024

JEREMY C. DANIEL
United States District Judge