**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTIAN AVITIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1:23-cv-15957 |
| THE CITY OF CHICAGO, BERNARD LEE, TIM TULLY, ERIN MURPHY, AND KEVIN SWEENEY | ) | |
| | ) | Honorable Jeremy C. Daniel |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Defendants City of Chicago, Bernard Lee, Tim Tully, Erin Murphy, and Kevin Sweeney, by and through one of their attorneys, Michael J. Dinard, Assistant Corporation Counsel, move for summary judgment on all claims pled in plaintiff's complaint. In support of their motion, defendants state as follows:

**INTRODUCTION**

After granting in part, and denying in part defendants' motion to dismiss, plaintiff's remaining claims are: Count II, a § 1983 false arrest claim against the City and defendant officers, Count III, a § 1983 supervisor liability claim against Sergeant Murphy, and Count IX, an indemnification claim. For the reasons set forth in this memorandum, this Court should grant defendants' motion for summary judgment and enter judgment in their favor.

On June 29, 2022, Chicago Police Officers Lee and Tully conducted a traffic stop on plaintiff because of a tinted registration cover. This Court has already held that the initial stop was supported

by probable cause, as the tinted registration is readily apparent in the body-worn video and by plaintiff's own admission. (Dkt. 55, pg. 13.) When Officer Lee ran plaintiff's name in the Law Enforcement Agencies Data System, ("LEADS"), it showed that plaintiff did not have a valid concealed carry license, ("CCL"). Plaintiff was placed into custody at this point because the officers had probable cause to arrest him for possessing the firearm without a valid CCL. Despite this, the officers allowed plaintiff over four minutes on scene to attempt to use his phone and retrieve whatever he wanted from it. Despite this time, plaintiff was unable to provide any proof of a valid CCL and was placed into custody.

The undisputed facts show that on June 29, 2022, plaintiff's CCL was not active. He could have taken hours to leisurely access his ISP portal page – and it would not have mattered. He did not have a valid CCL on June 29, 2022. These officers had probable cause to arrest plaintiff for not having a CCL that day. The Illinois State Police ("ISP") itself confirmed that plaintiff could not legally possess the firearm. Defendants were presented with a LEADS screen that showed plaintiff did not have a valid CCL. Based on that and Plaintiff's illegal covering over his license plate, the officers had probable cause to arrest plaintiff.

## BACKGROUND

On June 29, 2022, plaintiff was pulled over by Officers Lee and Tully for having an obstructed vehicle registration. (SOF ¶ 6.) Upon approach, Tully observed that plaintiff had a bb gun rifle visible in the back seat area of the vehicle. (*Id.* ¶ 11.) Plaintiff told the officers that he had a 9mm Beretta handgun concealed on his front passenger seat. (*Id.* ¶ 13.) Tully retrieved the firearm, determined it was loaded, and took custody of it for the pendency of the stop. (*Id.* ¶ 14.) Plaintiff provided the officers his FOID card, and mentioned he had an e-card. (*Id.* ¶ 17.) Lee asked plaintiff out of the vehicle, allowing plaintiff to keep his phone and continue to operate it. (*Id.* ¶¶ 19, 24.) While Lee went back to his vehicle to run plaintiff's name through LEADS, plaintiff continued to operate his phone

at the rear of his own vehicle. (*Id.* ¶¶ 24-26.) After running plaintiff's name multiple times and seeing that his name was not in the system with a valid CCL, Lee exited the vehicle and detained plaintiff. (*Id.* ¶ 29.) Defendant Murphy arrived on scene before plaintiff was placed into custody. (*Id.* ¶ 9.)

During the stop, plaintiff informed the officers that he needed to get his ecard off of his phone. (*Id.* ¶ 18.)Plaintiff was having signal issues with his phone and believed one had to manually keep tapping the back arrow to reach his birth year to sign into the ISP portal. (*Id.* ¶¶ 22-23.) Plaintiff was given more than four minutes to retrieve his ecard from his phone. (*Id.* ¶ 24.) The defendants allowed plaintiff to utilize his cell phone from the moment he was stopped up until he was ultimately placed into custody. (*Id.* ¶ 26.) Plaintiff learned during his deposition that one only needs to touch the year on the screen to be able to quickly scroll through the years to his birthday. (*Id.* ¶¶ 31, 32.)

John Strode is a supervisor for the application processing unit for FOID and CCLs for ISP testified in a deposition. (*Id.* ¶ 42, 43.) Strode explained that plaintiff's CCL went active on July 11, 2022. (*Id.* ¶ 43.) He further explained that when a person's CCL is active is when they are able to carry a concealed firearm. (*Id.* ¶ 45.) Plaintiff's ISP certified abstract also indicates that plaintiff's CCL was not active on June 29, 2022. (*Id.* ¶ 44.) ISP records indicate that plaintiff logged into his account on 6-21-2022 and 6-30-2022. (*Id.* ¶ 47.) Plaintiff should not have been able to generate an electronic CCL on June 30, 2022. (*Id.* ¶ 48.) Ultimately, John Strode determined that plaintiff did not have an active CCL on June 29, 2022. (*Id.* ¶ 43.) He also confirmed that when a person's CCL becomes active in the ISP system, it is then going to show active in LEADS. (*Id.* ¶ 46.)

After being unable to retrieve his CCL, plaintiff was arrested and cited in violation of 720 ILCS 5.0/24-1.6(a)(1) for possessing a concealed firearm without a CCL, and cited in violation of 605 ILCS 10.0/27.2(a) for the obstructed license plate. (*Id.* ¶¶ 57, 58.) The next morning, Judge Susana

Ortiz found probable cause to detain the plaintiff and then released him on an I-bond. (*Id.* ¶ 59, 60.) Plaintiff's criminal matter was ultimately dismissed *nolle* prosequi on August 17, 2022. (*Id.* ¶ 61.)

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hospital Corp.*, 892 F.3d 887, 894 (7th Cir. 2018).

## ANALYSIS

After granting in part the defendants' motion to dismiss, only Counts II, III and IX[1] of plaintiff's complaint remain. Dkt. 55. Count II is a § 1983 false arrest claim against the defendant officers. Count III is a § 1983 supervisor liability claim against Sergeant Murphy.. Finally, Count IX is plaintiff's indemnification provision. These remaining counts of plaintiff's complaint cannot survive summary judgment. First, the officers had probable cause to arrest the plaintiff. Plaintiff was driving with an illegal covering over his license plate and the LEADS system informed the officers that plaintiff did not have a valid CCL, so they arrested him. Ultimately, LEADS was correct, as plaintiff's

---

[1] Count IX of plaintiff's complaint is an indemnification claim which cannot survive if the underlying counts are dismissed. The City is not liable for an injury resulting from an act or omission of its employee where the employee is not liable. 745 ILCS 10/2-109 (West 2016).

CCL was not active until July 11, 2022. Next, if this Court finds that the officers did not have probable cause, they should be afforded qualified immunity – they at the very least had "arguable" probable cause. Finally, the supervisor liability claim must be dismissed because the officer's had probable cause the arrest the plaintiff and Sergeant Murphy was not reckless in her conduct on scene. Lastly, Plaintiff's indemnification claim fails because the substantive claims fail.

## I. The Officers had Probable Cause to Arrest Plaintiff.

Probable cause for an arrest serves as "an absolute defense to any § 1983 claim against a police officer for false arrest." *Braun v. Village of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022) (quoting *Jump v. Village of Shorewood*, 42 F.4th 782, 788 (7th Cir. 2022)). "Probable cause to arrest exists 'when the facts and circumstances that are known to [the officer] reasonably support a belief that the individual has committed, is committing, or is about to commit a crime." *Id.* (quoting *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007)). It "deals with probabilities and depends on the totality of the circumstances." *District of Columbia v. Wesby*, 583 U.S. 48, 138 S. Ct. 577, 586, 199 L.Ed.2d 453 (2018) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003)). It "is not a high bar," *id.* (quoting *Kaley v. United States*, 571 U.S. 320, 338, 134 S.Ct. 1090, 188 L.Ed.2d 46 (2014)), and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity[,]" *id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "[A]n arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that *some* criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect." *Fox v. Hayes*, 600 F.3d 819, 837 (7th Cir. 2010) (*emphasis original*). *See also Devenpeck v. Alford*, 543 U.S. 146 (Court rejected the theory that the probable cause used to arrest must be "closely related to" and based on the same conduct as the offense identified by

the arresting officer at the time of the arrest.) *See also Jackson v. Parker*, 627 F.3d 634, 638-640 (7th Cir. 2010).

Illinois law prohibits tinted plastic or tinted glass coverings on a registration plate. See 605 ILCS 10/27.2(a). The law also prohibits any cover that obstructs the visibility or ability for the registration to be electronically recorded. *Id.* Further, Section 9–76–160(d) of the Chicago Municipal Code prohibits motorists from covering their license plates with "any tinted or colored screen." See *Jenkins v. Spaargaren*, No. 09 C 3453, 2011 WL 1356757, at *1 (N.D. Ill. Apr. 7, 2011) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), "[p]olice officers may arrest a driver if they have probable cause to believe he has committed even a minor traffic offense.")

The defendants initiated the stop for the registration tint, and the tint is visible on the officers' body-worn camera footage. This Court has already ruled and Plaintiff agrees that his registration tint was illegal. It follows that the defendants had probable cause to arrest plaintiff for the registration tint alone, and summary judgment should be granted in defendants' favor.

The Illinois Concealed Carry Act legalized the possession of a concealed firearm, so long as the licensee possesses their license at all times the licensee carries a concealed firearm while not on their own land or in their own abode – along with other limited exceptions. 430 ILCS 66/10(g). It follows that if someone possesses a handgun, and the handgun is uncased, loaded, and immediately accessible, and that person does not have a valid concealed carry license, that person is in violation of 720 ILCS 5/24-1.6(a), a class 4 felony.

Finally, even with a valid firearm owner's identification ("FOID") card, plaintiff was not transporting his firearm in a legal manner. Illinois law requires a valid FOID holder to transport their firearm in a "firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card." 720 ILCS 5/24-1(a)(10)(iii).

The case law in the Northern District of Illinois illustrates that plaintiff cannot proceed with

his claims. In *Lipford v. City of Chicago*, that court concluded that officers had probable cause to believe that the plaintiff violated the FOID Card Act when he admitted to possessing firearms but could not produce a FOID card upon request. 2018 WL 1156242, at *4 (N.D. Ill. 2018). Further, in *Robinson v. Cook County*, claims were dismissed where that plaintiff alleged his FOID was illegally revoked and those defendants should have known that his right to bear arms was not restricted. 2021 WL 365770, at *5 (N.D. Ill. 2021). These analogous cases illustrate that the defendants operated with crystal clear probable cause given what their LEADS search told them. It would have been a dereliction of duty for them not to arrest the plaintiff and let the criminal justice system sort out the intricacies of the ecard issuance drama. This Court should grant summary judgment as to Count II because the defendants had probable cause to arrest plaintiff for multiple violations of Illinois law.

In this case, once the officers saw that their LEADS database indicated plaintiff did not have a valid CCL, they had probable cause to arrest him for possessing his firearm.[2] The court in *Ochoa v. City of Chicago* was faced with facts analogous to the ones at issue here. No. 22-CV-2283, 2024 WL 1050239, at *22 (N.D. Ill. Mar. 11, 2024). In *Ochoa*, officers ran that plaintiff's FOID through the computer system, which showed that the card was revoked. *Id.* That alone was sufficient probable cause to arrest that plaintiff, just as it is enough probable cause in this case. *Id.* In *Ochoa*, that plaintiff was not even technically violating the law because his revocation was supposed to go into effect 48 hours after being served with an order of protection, that the arresting officers were contemporaneously serving upon him during the incident. *Id.* The record was unclear if those officers

---

[2] Police officers may rely on databases such as LEADS for obtaining probable cause. *Carr v. Jehl*, No. 13 CV 6063, 2015 WL 362089, at *6 (N.D. Ill. Jan. 28, 2015).

knew about the 48-hour grace period that plaintiff should have been afforded to turn in his weapons. *Id.* In this case, the officers were correct. Plaintiff did not have a valid CCL at the time of the stop.

For the first time perhaps in all of jurisprudence, the plaintiff was apparently hoping that these defendants *would* have prolonged their stop of him. However, just as in *Ochoa*, "[t]hat rabbit hole is a dead end." *Id.* The *Ochoa* plaintiff argued that police should not have arrested him because they should have done more to figure out that he did not violate the statute. *Id.* The plaintiff is going to ask this Court to do the same. And just like the *Ochoa* court, this Court should deny plaintiff that possibility.

The *Ochoa* court noted that "[r]easonableness is key," and that the officers did not need to run down all leads to eliminate any possibility of non-wrongdoing. Id. (citing *Hernandez v. Sheahan*, 455 F.3d 772, 775 (7th Cir. 2006) ("[P]robable cause ... is well short of certainty. Like a grand jury, police may act on the basis of inculpatory evidence without trying to tote up and weigh all exculpatory evidence.") (citation omitted); see also *Burritt v. Ditlefsen*, 807 F.3d 239, 251 (7th Cir. 2015) ("Law enforcement is not required to discover more information to undermine probable cause once it has been established.")). Just like *Ochoa*, the defendants in this matter had inarguable probable cause to arrest plaintiff for a violation of the concealed carry act – the inculpatory evidence being the information on their LEADS system. *Ochoa* at *23.

The defendants also had probable cause to arrest the plaintiff for the tinted registration cover, as well as for his apparent violation of the FOID act. The defendants did not need to call ISP to double check whether their LEADS computer was accurate. The defendants did not need to jump on their smartphones and research anything about the ecard statute, or how ISP was implementing it. They had probable cause. And they acted on it – as they should have.  The defendants went above and beyond, they allowed plaintiff to attempt to access some sort of credential on his phone for at least 4 unadulterated minutes. After the time passed, the fact remained that plaintiff was illegally transporting a concealed firearm without a concealed carry license.

To add, when a court has already determined that probable cause exists to arrest or detain a person, that finding "is normally entitled to a presumption of validity." *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019). In this case, the record reflects that the Honorable Susana Ortiz found probable cause to detain plaintiff in criminal court the day after the incident. Accordingly, this Court may presume the existence of probable cause. Plaintiff has presented no evidence to overcome the presumption that these findings were valid or that the defendants did anything to mislead the judge into those findings. Even without this presumption, plaintiff's Fourth Amendment rights were not violated because the charges of which he was arrested were supported by probable cause. Therefore, Defendants had probable cause to seize Plaintiff for illegal tints on his license plate, failing to have a valid CCL license, and violating the FOID requirements. Summary judgment should be granted in Defendants' favor as to Count II.

## II. Plaintiff's Supervisor Liability Claim Cannot Prevail.

Along with Count II, plaintiff brings a § 1983 supervisor liability claim against Sergeant Murphy under Count III. Under Section 1983, "a government official is only liable for his or her own misconduct." *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021) (quoting *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015)). A supervisor is liable for a subordinate's misconduct resulting in a constitutional violation only if the supervisor was personally involved. *Id.*; see also *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). "Personal involvement in a subordinate's constitutional violation requires supervisors to know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Taylor*, 999 F.3d at 494. For a supervisor to be liable for the allegedly wrongful conduct of others, she must both (1) "know about the conduct" and (2) facilitate, approve, condone, or turn a blind eye toward it. *Kemp v. Fulton Cnty.*, 27 F.4th 491, 498 (7th Cir. 2022). Under the second prong, a supervisor is liable if he acted purposefully, knowingly, or recklessly, but not

negligently. *Id.*; *Gonzalez v. McHenry Cnty., Ill.*, 40 F.4th 824, 828 (7th Cir. 2022).

Count III must fail because, as shown above, these officers had probable cause and/or "arguable" probable cause to arrest the plaintiff. *See* Section III below. Because of this, the conduct in question was not wrongful, as is obviously required for any supervisor liability to attach. *Kemp*, 27 F.4th at 498. On the day in question, Sergeant Murphy supervised officers who were doing their job correctly. Murphy arrived on scene and joined Tully at the rear of plaintiff's vehicle. Further, she attempted to explain to the plaintiff that his CCL was not appearing in LEADS.

Second, a supervisor must act purposefully, knowingly, or recklessly for liability to attach. *Id.* Sergeant Murphy did not negligently, purposefully, knowingly, or recklessly violate plaintiff's Fourth Amendment rights. Murphy relied on the LEADS read out just like her officers did. Plaintiff was ultimately unable to produce any proof that he had a valid and active CCL. For both of the above reasons, plaintiff's supervisor liability claim cannot survive summary judgment and this Court should enter judgment in Defendants' favor as to Count III.

### III. The Officers Should Benefit from Qualified Immunity.

This Court should find that the officers are entitled to qualified immunity as there was no constitutional violation. However, even if the Court cannot clearly determine that defendants had probable cause to arrest plaintiff, it should still grant this motion because Defendants certainly had "arguable" probable cause and the law was not clearly well established at the time of the incident to show otherwise.

"The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not clearly violate statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity serves to balance the competing interests of protecting public officials from harassment, liability, and distractions while at the same time needing to hold public officials accountable when they

exercise their power unreasonably. *Id.* at 231. The protection of qualified immunity applies regardless of whether the officer's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231; *Tebbens v. Mushol*, 692 F.3d 807, 820 (7th Cir. 2012) ("Qualified Immunity protects officers who are 'reasonable, even if mistaken' in making probable cause assessments."). In terms of qualified immunity, an officer needs only "arguable" probable cause. *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014). Arguable probable cause exists when a reasonable officer in the same circumstances and with the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law. *Id.*; *Tebbens*, 692 F.3d at 821 ("The qualified immunity defense … provides ample protection to all but the plainly incompetent or those who knowingly violate the law.").

In this case, the defendants should be afforded qualified immunity for operating on the information that their LEADS system gave them. If for some reason they were ultimately mistaken in relying on the database, it at least afforded them "arguable" probable cause. If this Court finds that the officers should have waited longer on scene, and given plaintiff a longer amount of time on his phone, the officers were at least arguably reasonable in giving the plaintiff the time he was afforded on scene.

*Ochoa*, *Lipford*, and *Robinson* are not distinguishable from the case at bar. However, for purposes of arguable probable cause, any potential shallow difference is immaterial. *Ochoa* at *23. Hypothetically, if the defendants were aware of the ecard system, and were aware of the possibility that plaintiff may have been able to generate an ecard despite his CCL not being active – they still had arguable probable cause due to the LEADS system indicating plaintiff's lack of a CCL.

In this case, the defendants gave plaintiff what they deemed a reasonable amount of time to prove he had a valid CCL – and plaintiff was unable to produce said proof. It is for this reason as well that plaintiff's claims cannot survive summary judgment and this Court should find in Defendants'

favor.

### IV. Plaintiff's Indemnification Claim Necessarily Fails.

The City is entitled to summary judgment as a matter of law on the indemnification claim because the claims against the individual officers also fail. See 745 ILCS 10/2-109; 747 ILCS 10/9-102. "The City cannot be held vicariously liable for the actions of the officers if the officers are not liable themselves." *Walker v. City of Chicago*, No. 1:21-CV-02648, 2025 WL 343471, at \*5 (N.D. Ill. Jan. 30, 2025).

### CONCLUSION

The undisputed facts show that the defendants had probable cause to arrest the plaintiff for a violation of the concealed carry act In fact, the defendants had probable cause to arrest the plaintiff for a violation of the FOID act, and for the tinted registration cover. Summary judgment should be granted in Sergeant Murphy's favor because there was no supervisor liability. The officer defendants should benefit from qualified immunity as well. Finally, plaintiff's indemnification claim necessarily fails. Defendants are entitled to summary judgment. If this Court were to find that they did not have the requisite probable cause, they certainly had "arguable" probable cause enough to benefit from qualified immunity. John Strode confirmed for the parties that plaintiff did not have a valid CCL on June 29, 2022. However, this is ultimately a red herring. The LEADS system gave them all they needed to know, and all the probable cause required to arrest plaintiff. For these reasons, summary judgment should be awarded in the defendants' favor for all of plaintiff's claims.

DATED: December 17, 2025

Respectfully submitted,

BY:  */s/ Michael J. Dinard*
MICHAEL J. DINARD
Assistant Corporation Counsel
Attorney No. 6308886

Maxwell Lisy, Assistant Corporation Counsel Supervisor

Michael J. Dinard, Assistant Corporation Counsel
City of Chicago, Department of Law
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
312.744.1975 (Phone)
michael.dinard@cityofchicago.org

## CERTIFICATE OF SERVICE

I certify that on December 17, 2025, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Michael J. Dinard*
Michael J. Dinard
Assistant Corporation Counsel